**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

JESSE WATKINS,                      :
                                    : Civil Action No. 12-4851 (FLW)
       Plaintiff,           :
                                    :
       v.                   : **OPINION**
                                    :
M. MERRIEL, et al.,                 :
                                    :
       Defendants.          :

**APPEARANCES:**

    JESSE WATKINS, Plaintiff pro se
    SBI # 25457B
    New Jersey State Prison
    P.O. Box 861
    Trenton, New Jersey 08625

    MARVIN L. FREEMAN, ESQ.
    STATE OF NEW JERSEY OFFICE OF THE ATTORNEY GENERAL
    25 Market Street, P.O. Box 112
    Trenton, New Jersey 08625
    Counsel for Defendants

**WOLFSON**, District Judge

    This matter comes before the Court on the motion of Plaintiff Jesse Watkins for a preliminary injunction against Defendant Correctional Officer ("C/O") M. Merriel, enjoining Defendant from harassing, threatening and retaliating against Plaintiff. (Docket No. 6.) The Court also considers Plaintiff's appeal (Dkt. # 13) from the March 27, 2013 Decision

of the Honorable Tonianne J. Bongiovanni, U.S.M.J., denying Plaintiff's application for appointment of counsel in this matter. (Dkt. # 12.) These motions are being considered on the papers, pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the motion for preliminary injunctive relief is denied without prejudice, and Plaintiff's appeal from denial of appointment of counsel is granted.

## I. BACKGROUND

On August 3, 2012, Plaintiff Jesse Watkins filed this civil rights Complaint seeking relief pursuant to 42 U.S.C. § 1983. Plaintiff alleges an Eighth Amendment violation, as well as various state law tort claims, against several correctional officers at the New Jersey State Prison ("NJSP"), where Plaintiff is confined, namely, C/O M. Merriel, C/O L. Logan and Sergeant Rokeach. (Dkt. # 1, Complaint at Caption, ¶¶ 4, 5 and 6.)

Plaintiff is a wheelchair-bound inmate currently confined at NJSP. Plaintiff alleges that, on December 4, 2011, while he was trying to attend a Protestant Church Service at NJSP, Defendant C/O Merriel told Plaintiff and another wheelchair-bound inmate to walk through the metal detector. When Plaintiff told Merriel that he could not walk and that he had a medical pass, Merriel allegedly responded: "I don't care about a

2

doctor's note. You can walk!" Plaintiff then turned to Defendant Logan, who was standing by the window, to read the medical pass inside Plaintiff's bible. Nevertheless, both Merriel and Logan gave Plaintiff a direct order to "Get up and walk!" (*Id*. at ¶ 7.)

Another correction officer, C/O Tubby, was working inside the booth at the time. Tubby knocked on the window to indicate to Merriel and Logan to pat search Plaintiff. However, the officer's attempt to assist Plaintiff allegedly was ignored by Merriel and Logan. Plaintiff tried to comply with Merriel and Logan's order to walk, but he collapsed to the floor in excruciating pain. Plaintiff alleges that he could not feel any sensations in his legs, but he also felt a sharp pain in his back. Plaintiff asked for a medical code, but Sgt. Rokeach, who had just arrived, said: "No, he wasn't going to call a code, and that it was yard time." Rokeach then instructed inmate Livingston to pick up Plaintiff from the floor. (*Id*. at ¶ 9.)

Plaintiff alleges that the attempt to move him caused him further pain, at which point, Rokeach ordered other prisoners to assist inmate Livingston, who was unable to pick up Plaintiff by himself. Plaintiff was lifted and placed in his wheelchair. (*Id*. at ¶ 10.) Plaintiff then asked Livingston to wheel him to the medical clinic, to which Merriel yelled "No!" Livingston

3

was then instructed by Merriel to return Plaintiff to his housing unit, which he did. When Plaintiff arrived in his housing unit, he immediately asked inmate Richard Thompson (#568688), another porter on Unit 2C, to tell the Unit C/O Thorn that Plaintiff needed an emergency pass to the medical clinic because Plaintiff was in "great pain." Thompson then wheeled Plaintiff to the clinic. (*Id.* at ¶¶ 11, 12.)

Once in the clinic, Plaintiff was seen by Nurse Lance Carver, who gave Plaintiff a shot of Tardal and told Plaintiff to lie down and relax. Plaintiff was then returned to his housing unit by inmate Thompson. (*Id.* at ¶¶ 13, 14.)

On December 6, 2011, Plaintiff wrote to various New Jersey Department of Corrections ("NJDOC") officials, namely Commissioner Gary Lanigan, Assistant Commissioner of Operations, Debbe Faunce of the Special Investigation Division ("SID") Central Office, New Jersey Attorney General Paula Dow, NJSP Administrator Charles Warren, and the Principal Investigator of the SID, asking that the video tapes of December 4, 2011 be preserved as evidence. (*Id.* at ¶¶ 17-22.)

On December 10, 2011, Plaintiff filed an inmate grievance concerning the December 4, 2011 incident. Plaintiff allegedly received an unsatisfactory response to his grievance on January 7, 2012, and promptly filed an administrative appeal on January

4

9, 2012.  Plaintiff's appeal was returned to him on March 21, 2012, well past the 30-day time limit allotted to staff response, because Plaintiff had inadvertently forgotten to sign his appeal.  Plaintiff signed the appeal and promptly re-filed it, but to date, has not received any response.  (*Id*. at ¶ 23.)

On February 26, 2012, Plaintiff filed a Tort Claim Notice with the State of New Jersey Bureau of Risk Management, a copy of which he attached to his Complaint at Exhibit Q.  On or about May 17, 2012, Plaintiff received a denial letter from Terrence Little, Claims Investigator.  Although Plaintiff refers to the letter as Exhibit "R", no such exhibit was attached to his Complaint.  Plaintiff contends that he has exhausted his administrative and tort claim remedies before proceeding with this lawsuit.

Plaintiff's Complaint asserts a cause of action under the Eighth Amendment, alleging that defendants acted with deliberate indifference in violation of Plaintiff's right to be free from cruel and unusual punishment.  (*Id*. at Count I.)  He also asserts state law tort claims of intentional infliction of emotional distress and willful misconduct in violation of N.J.S.A. 2C:59-1.  (*Id*. at Counts II and IV.)  Plaintiff seeks an unspecified amount in punitive damages (Count III), and

compensatory damages of $150,000.00. (*Id*. at Prayer for Relief.)

On January 29, 2013, this Court issued an Order granting Plaintiff's application to proceed *in forma pauperis*, and directing the Clerk of the Court to issue summonses for U.S. Marshal's service on the named Defendants. (Dkt. # 3.)

On January 31, 2013, Plaintiff filed this motion for a preliminary injunction, as well as an application for appointment of pro bono counsel. (Dkt. ## 6 and 7, respectively.) Magistrate Judge Tonianne J. Bongiovanni denied without prejudice Plaintiff's application for appointment of counsel, based upon an evaluation of factors under *Tabron v. Grace*, 6 F.3d 147 (3 Cir. 1993). Specifically, Magistrate Judge Bongiovanni found that Plaintiff had not supplied the Court with any supporting medical documentation or doctor's opinion to show that Plaintiff suffers from ailments limiting his mobility, which would preclude Plaintiff from proceeding *pro se* in this case. Magistrate Judge Bongiovanni also noted that no discovery had been conducted, rendering the issue of credibility not ripe at the time, and Plaintiff had not demonstrated a need for expert testimony. Magistrate Judge Bongiovanni further observed that Plaintiff had not claimed a lack of resources, making

Plaintiff's status as a prisoner the single factor for consideration of his request for pro bono counsel. (Dkt. # 12.)

Plaintiff filed his appeal from this denial of appointment of counsel on March 27, 2013. (Dkt. # 13.) Plaintiff argues that the Magistrate Judge overlooked several factors, namely, Plaintiff's "complete ignorance of the law," the "complexity of [his] medical claims," and the fact that Plaintiff's indigent status already was determined when this Court granted Plaintiff's application for *in forma pauperis*. (*Id.* at ¶¶ 4, 5 and 6.)

In support of his motion for a preliminary injunction, (Dkt. # 6), Plaintiff alleges that Defendant Merriel continues to violate Plaintiff's constitutional rights. In particular, Plaintiff alleges the following conduct by Merriel:

• On February 5, 2012, Merriel "threatened and harassed" Plaintiff when Plaintiff went to the clinic for his diabetic shot. (Dkt. # 6 at ¶ 5.)

• On February 12, 2012, Merriel "threatened and harassed" Plaintiff while Plaintiff was attending church service. (*Id.* at ¶ 6.)

• On April 8, 2012, Merriel denied Plaintiff access to a religious service because Plaintiff was unable to walk through

the metal detector, despite Plaintiff's medical pass. (*Id*. at ¶ 8.)

- On April 15, 2012, Merriel again denied Plaintiff's attendance at a religious service. (*Id*. at ¶ 9.)

Plaintiff alleges that he filed grievances regarding these actions by Merriel, which are still pending. Plaintiff also generally alleges that there have been other instances of ongoing misconduct by Merriel. (Id. at ¶ 10.)

On June 7, 2013, Defendants filed an Answer with Affirmative Defenses. (Dkt. # 18.) A Scheduling Order was entered on June 11, 2013, setting discovery to be completed by September 10, 2013, issues to be raised by September 5, 2013, dispositive motions to be filed by October 11, 2013 (made returnable on November 4, 2013), and for pretrial memorandums to be submitted by Plaintiff on November 26, 2013 and by Defendants on December 3, 2013. (Dkt. # 19.)

On September 3, 2013, Plaintiff wrote to the Court regarding pending issues, namely, the motion for preliminary injunction and the appeal from denial of pro bono counsel. (Dkt. # 21.) On September 4, 2013, Plaintiff filed a motion to compel Defendants to produce certain evidence. (Dkt. # 22.) On September 6, 2013, Plaintiff wrote to the Court asking that the Case Management Order be modified. (Dkt. # 23.)

On September 10, 2013, Magistrate Judge Bongiovanni denied Plaintiff's motion to compel, extended the discovery deadline to November 22, 2013, and set dispositive motions to be filed by December 27, 2013, with a return date of January 20, 2014. (Dkt. # 25.)

## II. DISCUSSION

### A. Motion for Preliminary Injunction

This Court has recently observed the "well-settled" standard of review in this circuit for a party seeking a preliminary injunction. *Starego v. New Jersey State Interscholastic Athletic Ass'n*, --- F. Supp2d ----, 2013 WL 4804821, * 3 (D.N.J. Sep. 9, 2013). Namely, Plaintiff must show: (1) a likelihood of success on the merits; (2) that he will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the non moving party; and (4) that the public interest favors such relief. *Id*. (citing *Conestoga Wood Specialties Corp. v. Sec'y of the U.S. Health and Serv.*, No. 13-1114, 2013 U.S.App. LEXIS 15238, at *11-12 (3d Cir. Jul. 26, 2013); *Kos Pharms. Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). The Third Circuit has further instructed, and freshly reconfirmed, that a plaintiff seeking an injunction must meet all four criteria, as "[a] plaintiffs failure to establish any

element in its favor renders a preliminary injunction inappropriate." *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999); *see Conestoga*, 2013 U.S.App. LEXIS 15238, at *11.

Taking these factors into consideration here, the Court finds that Plaintiff has not demonstrated that he will suffer irreparable harm in the event preliminary injunctive relief is not granted. To demonstrate irreparable harm, a plaintiff must point to an *imminent* risk of irreparable injury that "cannot be redressed by a legal or an equitable remedy following trial." *Hynoski v. Columbia Cnty Redevelopment Auth.*, 485 F. App'x 559, 563 (3d Cir. 2012) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989)). *See also Chester ex rel. N.L.R.B. v. Grane Healthcare Co.*, 666 F.3d 87, 89 (3d Cir. 2011) (describing irreparable harm factor as "*imminent* threat of irreparable harm") (emphasis added). It is plain from the motion submitted here that the incidents of alleged threats and harassment by Defendant Merriel, and the alleged denial of religious exercise, do not demonstrate imminence. The threats and harassment he complains of occurred more than four months before Plaintiff filed his initial

Complaint,[1] and almost ten months before Plaintiff filed his motion for a preliminary injunction. Thus, there are no allegations of fact to show that there are ongoing, post-complaint threats against Plaintiff. Accordingly, Plaintiff has not demonstrated he will suffer imminent irreparable harm if the preliminary injunction remedy is not granted.

Moreover, it is questionable whether Plaintiff could succeed on the merits of his claims of verbal harassment by Defendant Merriel. Generally, mere verbal harassment does not give rise to a constitutional violation. *See Boomer v. Lewis*, --- F. App'x ----, 2013 WL 4505455, *4 (3d Cir. Aug. 26, 2013); *McBride v. Deer*, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001) (taunts and threats are not an Eighth Amendment violation); *Oltarzewski v. Ruggiero*, 830 F.2d 136 (9th Cir. 1987).

Therefore, where Plaintiff has failed to establish irreparable harm and likelihood of success on the merits, issuance of a preliminary injunction is inappropriate at this time. Plaintiff's motion will be denied without prejudice accordingly.

---

[1] In his preliminary injunction motion, Plaintiff asserts that Merriel threatened and harassed him from February through April 2012. His initial Complaint was filed in August 2012.

B.  Appeal from Denial of Pro Bono Counsel

"Where an unrepresented [p]laintiff in a civil suit is indigent, and where good cause exists for the appointment of pro bono counsel under 28 U.S.C. § 1915(e)(1), the District Court has the discretion and authority to appoint pro bono counsel...." *Williams v. Hayman*, 488 F. Supp.2d 446, 447 (D.N.J. 2007); *see also Brandt v. Hogan*, Civil No. 10-4944 (FLW), 2013 WL 1702181, *11 (D.N.J. Apr. 18, 2013).  The District Court should exercise this discretion when the interests of justice require the appointment of counsel to assist Plaintiff in the prosecution of his or her case, which may occur at any point during the proceeding.  *See Tabron v. Grace*, 6 F.3d 147, 156 (3d Cir. 1993) ("[W]e emphasize that appointment of counsel under § 1915(d) may be made at any point in the litigation....").

When examining an application for appointment of counsel, a court must consider the following factors set forth by the Third Circuit in *Tabron v. Grace*:

   (1) the claim has some merit;

   (2) the pro se party lacks the ability to present an
   effective case without an attorney;

   (3) the legal issues are complex or, the ultimate legal
   issues are not complex, but the pro se party lacks the
   familiarity with the rules of evidence and discovery needed

to translate understanding of the law into presentation of the proofs;

(4) factual investigation will be necessary and the party is not adequately able to pursue said investigation;

(5) the case is likely to turn on credibility determinations;

(6) the case will require expert testimony; and

(7) the party is unable to attain and afford counsel on his/her own behalf.

6 F.3d at 156; *Brandt,* 2013 WL 1702181 at *12; *Lamas v. Gonzales*, Civil No. 07-3351 (DMC), 2007 WL 4166009, *1 (D.N.J. Nov.16, 2007) (citing *Parham v. Johnson*, 126 F.3d 454 (3d Cir. 1997)). A pro se litigant need not meet each of the *Tabron* factors for the Court to appoint counsel.

As noted above, Magistrate Judge Bongiovanni reasoned that appointment of counsel was not indicated at that early juncture because no discovery had yet been conducted, thus making any issue of credibility determinations premature. She also commented that Plaintiff had not shown a need for expert testimony, nor had Plaintiff provided any medical documentation to show that he suffers from ailments or disabilities that would limit his ability to prosecute his case.

Applying the *Tabron* factors to the present case, this Court likewise finds that the legal issues are not complex, and Plaintiff has demonstrated through his pleadings and

13

applications before this Court that he has sufficient familiarity with the rules of evidence and discovery procedure necessary to prosecute his case. However, several months have now passed since Magistrate Judge Bongiovanni's ruling, and this case is approaching the close of discovery. Moreover, credibility issues are likely to become a critical factor in the depositions of the parties. Therefore, in light of the current stage of the proceedings, the Court will depart from the Magistrate Judge's ruling.

The Court finds that Plaintiff has demonstrated several *Tabron* factors to support appointment of counsel; namely, (a) likely merit to his claims (*Tabron* factor # 1);(b) Plaintiff's indigency (*Tabron* factor # 7); and (c) that the case is apt to turn on credibility determinations requiring effective representation during depositions (*Tabron* factors ## 2, 5). These factors weigh in Plaintiff's favor for appointment of pro bono counsel at this time. Accordingly, Plaintiff's appeal from the Magistrate Judge's decision regarding appointment of counsel is granted, and the Court will grant Plaintiff's request for appointment of pro bon counsel.

III. CONCLUSION

For the reasons set forth above, Plaintiff's motion for a preliminary injunction (Dkt. # 6) is denied without prejudice.

However, Plaintiff's appeal (Dkt. # 13) from the Magistrate Judge's March 12, 2013 decision regarding appointment of counsel is granted, and Plaintiff's request for appointment of pro bono counsel is granted.  An appropriate order follows.

<u>s/Freda L. Wolfson</u>  
FREDA L. WOLFSON  
United States District Judge

Dated: