UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JESSE WATKINS, | Civil Action No. 12-4851 (FLW) |
| Plaintiff, | |
| v. | |
| MARVIN MERRIEL, et al., | |
| Defendants. | OPINION |

WOLFSON, United States District Judge:

I.      INTRODUCTION

This matter comes before the Court on Defendants' motions to dismiss and for summary judgment at to Plaintiff's Section 1983 and state law claims arising from allegations that he fell and injured himself when two correctional officers ordered him to get up from his wheelchair and walk through a metal detector at New Jersey State Prison.  Plaintiff also alleges that the supervisor stationed at Booth 1-E refused to provide him with emergency medical treatment after he fell; that one of the correctional officers began retaliating against him after he filed the instant suit; and that the Commissioner of NJDOC failed to implement policies and training that would have prevented the incident.  Among other arguments, Defendants contend that Plaintiff failed to exhaust his administrative remedies with respect to the conduct giving rise to his section 1983 claims.  As explained in this Opinion, exhaustion of administrative remedies under the Prison Litigation Reform Act ("PLRA") is an issue of law to be decided by the Court even where there are disputed issues of fact.  Because the Court finds there are disputed issues of fact that preclude summary judgment on the exhaustion issues, it will deny summary judgment on the exhaustion issue and hold a hearing to determine whether Plaintiff sufficiently exhausted his administrative

remedies.  The Court will defer ruling on Defendants' other arguments for dismissal and summary judgment in light of its decision to hold a hearing to resolve Defendants' exhaustion defense(s).

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

The Court recounts only the facts necessary to Defendants' exhaustion defense and explains the relevant evidence in more detail in the appropriate analysis sections of the Opinion. On December 4, 2011, the date of the incident in question, Plaintiff Jesse Watkins was incarcerated at New Jersey State Prison ("NJSP") in Trenton, New Jersey. (Declaration of Linda Santoro ("Santoro Decl.") at ¶ 2.)   It is undisputed that Plaintiff was cleared to use a wheelchair prior to that date.  On July 14, 2011, Dr. Abu Ahsan authored a note for Plaintiff stating "level 1, WC transport." (*See* July 14, 2011 Referral Form, Lustberg Decl., Ex. S.)  Dr. Ahsan also authored a medical note on October 14, 2011, which stated that Plaintiff was "unable to stand or walk without support due to medical condition."  (*See* October 14, 2011 Test Form, Lustberg Decl., Ex. T.)

According to Plaintiff, Defendants Merriel and Logan, two correctional officers at NJSP, ordered Plaintiff to "stand and walk" through the metal detector at the 1-E Booth, over his objections, and despite the fact that he referenced a medical note.  (*See* DSUMF ¶ 9; *see also* Deposition of Wilbert Brown ("Brown Dep."), Lustberg Decl., Ex. U at 29:16-31.)  Defendant Logan testified that both he and Defendant Merriel knew Plaintiff to use a wheelchair from past experience, and that Plaintiff referenced his medical pass on the day of the incident.  (*See* Dep. of Gary Logan (Logan Dep.), Lustberg Decl., Ex. R at 32:3-33:17; 36:16-38:8.)  Plaintiff has

---

[1] Unless otherwise noted, the Court views the facts from the record in the light most favorable to Plaintiff in light of the summary judgment standard.

- 2 -

offered testimony to suggest that if he refused Merriel's and Logan's order, he faced potential lockup.  (*See* Logan Dep., Lustberg Decl., Ex. R at 43:25-44:11.)  When Plaintiff attempted to comply with the Defendants' order, he fell into the metal detector.  (*See* Deposition of Officer Douglas Tubby ("Tubby Dep."), Lustberg Decl., Ex. V at 27:20-28:1; 60:15-61:25.)

It is undisputed that Defendant Rokeach, Merriel's and Logan's supervisor,[2] was not present at the 1-E Booth during the incident on December 4, 2011 (*see* Logan Dep., Lustberg Decl., Ex. R at 51:23-52:6) and returned to the 1-E Booth after Plaintiff had fallen.  (Pl. Dep. Tr. 64:12-21.)  Plaintiff alleges, however, that Defendant Rokeach refused to call for emergency medical treatment, known as a "Code 53."  (*See* Rokeach Dep. at 15:12-20.)

Finally, Plaintiff contends in his Amended Complaint, that "[s]ince [the filing of the instant lawsuit on] August 3, 2012, Defendant Merriel has threatened and continues to threaten [Plaintiff].  These threats are direct responses to [Plaintiff's] Complaint." (Am. Compl. at ¶ 50.) Plaintiff also contends that "Defendant Merriel's threats, which concern Mr. Watkins' safety and security, are retaliatory in nature and specifically designed to deter Mr. Watkins from exercising his First Amendment rights." (*Id.* at ¶ 51.)

### a.  Exhaustion of Administrative Remedies

NJSP has a formalized review process for use by inmates in making requests and submitting grievances known as the Inmate Remedy Form System ("IRF System").  As explained in the Declaration of James Dutch, the Department-wide Inmate Grievance Coordinator for the NJDOC, "[t]he Inmate Grievance and Tracking Program utilizes a form document, referred to as an Inmate Remedy System Form ("IRF"), which is the same form used

---

[2] Defendants Rokeach, Merriel, and Logan are collectively referred to as the Officer Defendants where appropriate.

at each of the DOC's thirteen prisons." [3]  (Dutch Decl. at ¶ 7.)   It is undisputed that NJSP's

Inmate Handbook outlines the process for submitting an IRF and appealing an adverse

determination.  (*See* DSUMF at ¶ 17; Pl. RSUMF at ¶ 17.)  It also appears undisputed that

Plaintiff was aware of the process for filing IRFs and had used the process to resolve grievances

before and after the incidents at issue here.

In his Declaration, Mr. Dutch acknowledges "[o]ther avenues through which inmates

may occasionally raise complaints, including letters to administrators, the Office of the

Commissioner, and the Ombudsman; or referral of an investigation to the Special Investigations

Division, which does not report to prison administration but directly to the DOC's Central Office

in Trenton." (Dutch Decl. at ¶ 5.)  Mr. Dutch states that these avenues "do not guarantee that

appropriate administration and staff at the particular prison are fully aware, or aware at all, of an

inmate's grievance."  (*Id.*)

### i.   Exhaustion of Administrative Remedies for the December 4, 2011 Incident and the Acts of Retaliation by Defendant Merriel.

Plaintiff submitted an initial IRF, dated December 10, 2011, for the December 4, 2011

incident.[4] (*See* IRF from Jesse Watkins, dated Dec. 10, 2014, Lustberg Decl., Ex. B; DSUMF at

¶ 22.)  Plaintiff filed his initial IRF concerning Defendant Merriel's allegedly retaliatory conduct

on July 11, 2012. [5]  (*See* IRF, dated July 11, 2012, Lustberg Decl., Ex. G.)  Plaintiff did not

---

[3] The Dutch Declaration further explains that "[t]his same form has previously been referred to
as an "Inmate Request System and Remedy Form"; however, despite having a slightly different
title, the form was otherwise identical in its function."  (*Id.*)

[4] Another IRF regarding the December 4, 2011 incident, dated December 9, 2011, was prepared
by another inmate on Plaintiff's behalf.  (*See* IRF, dated Dec. 9, 2011, Lustberg Decl., Ex. C.)
The DOC responded to this IRF on February 13, 2012, stating: "Sir, Reports were written on this
'incident' and the reports do not reflect your account. Thank you." (*See* Lustberg Decl., Ex. C.)

[5] In December of 2013, Plaintiff also filed several IRFs regarding threats made by Defendant
Merrill against Plaintiff while he was attempting to attend church services.  Two of these IRFs
(dated December 9, 2013 and December 29, 2013) reflect that Plaintiff appealed the initial

receive a response to this initial IRF until approximately four months later on November 30, 2012, which stated: "These allegations cannot be verified." (*Id.*)

The parties dispute whether Plaintiff appealed these initial IRF determinations. Defendants have submitted copies of all IRFs submitted by Plaintiff and processed by the Remedy Coordinator for the relevant incidents.  Parts four and five of the December 10, 2011 IRF form and the July 11, 2012 form, which are designated for the inmate's appeal and the administrative decision on the appeal, are blank.  (Lustberg Decl., Ex. C, G.)  Defendants have also submitted the Declaration of Linda Santoro that explains that the IRFs identified (and presumably produced) by Defendants include properly submitted appeals by Plaintiff but do not include any initial IRFs or appeals that were improperly submitted by Plaintiff.  (*See* Declaration of Linda Santoro ("Santoro Decl.") at ¶ 16.)

Plaintiff contends that he submitted appeals of the relevant IRFs from which he received a negative response from the NJDOC.[6]  Plaintiff does not submit his own declaration to support his position; instead, he attempts to support his contention through the Declaration of his attorney, Daniel J. McGrady, Esq. ("McGrady Decl."), which states as follows:

> 2.     Plaintiff maintains that he submitted appeals for each and every Inmate Remedy System Form ("IRF") as to which he received a negative response from the Department of Corrections (the "DOC"). This includes his December 10, 2011

---

determination and received a response to his appeal.  (ECF No. 69-8, at 7, 16).  Defendants acknowledge that the December 9, 2013 and December 29, 2013 IRFs were properly exhausted by Plaintiff, but dispute that these IRFs relate to the retaliation claims asserted against Defendant Merrill in Plaintiff's Amended Complaint. (ECF No. ¶¶ 23, 25.)

[6]  In his Amended Complaint, Plaintiff alleges that he filed his appeal of the December 10, 2011 IRF on January 9, 2012.  (Am. Compl. at ¶ 37.)  On or about March 21, 2012, the grievance coordinator returned his grievance appeal because Plaintiff forgot to sign it and instructed him to sign the appeal and refile it, which he did. (*Id.*)   Plaintiff alleges that, as of the time he submitted the Amended Complaint, he had not received a response to the grievance appeal of the December 10, 2011 IRF. (*Id.*)  Plaintiff's Amended Complaint was submitted for him by his attorneys and is not verified or otherwise sworn under penalty of perjury.  (*See id.*)

IRF relating to the December 4, 2011 incident, as well his July 11, 2012 IRF relating to Defendant Merriel's retaliatory conduct. Since Plaintiff never received a response to his November 24, 2014 IRF, he obviously could not submit an appeal with respect to this form. According to Plaintiff, the DOC did not return copies of his appeals after he submitted them. In addition, Plaintiff asserts that he was not permitted to make copies of his appeals prior to submitting them. Therefore, Plaintiff does not have copies of many of the appeals that he filed, including appeals relating to his December 10, 2011 IRF and his July 11, 2012 IRF.[7]

(*Id.* at ¶ 2.)

The Inmate Remedy Form System Process outlined in the Inmate Handbook states that "[a]ppeals [of the initial IRF determination] "must be submitted using the yellow copy (copy returned to you) of the original IRSF101 form you submitted." (Inmate Handbook Excerpts, Santoro Decl., Ex. B.) The appeal must be also submitted within ten days of the date the initial response is returned to an inmate, and the Inmate Handbook states that "[a]ppeals submitted outside of stated time frame will not be accepted or processed." (*See id.*) In his Declaration, Mr. Dutch acknowledges that "[o]n occasion, IRFs that are processed and filed by the prison's RF/grievance coordinator are not returned to the inmate." (Dutch, Decl. at ¶ 8.) In such an instance, the Defendants contend that inmates are not precluded from submitting a follow-up IRF. (*See id.*; *see also* Santoro Decl. at ¶ 13.)

Plaintiff has submitted an IRF, dated June 30, 2011, in which Plaintiff states that he has "some concerns because I haven't received (any) responses back from numerous[] complaints since (April, May) . . . . I would really appreciate if I could finally receive a response because I'm complying with procedures and still seem to be being neglected." (IRF from Jesse Watkins,

---

[7] In his Declaration, counsel for Plaintiff "certif[ies] under penalty of perjury that the foregoing is true and correct" but does not state that he has personal knowledge regarding the underlying facts that form the basis for his declaration. (*Id.*).

dated June 30, 2011, Lustberg Decl. at Ex. A.).  Plaintiff has also submitted an undated

"Corrective Action Form" in which a prison official indicates (1) that the Remedy Coordinator

had recently retired, (2) that the prison official did not know whether the Coordinator had

rejected any of Plaintiff's IRFs, and (2) that Plaintiff was free to resubmit them.  (*See* Lustberg

Decl., Ex. P.)  This Corrective Action Form also references a staff member forcing inmates out

of their wheelchairs.  (*Id.*)  Finally, Plaintiff has submitted an IRF dated November 24, 2014,

regarding alleged acts of harassment by Defendant Merriel.  This IRF states that Plaintiff has

"submitted numerous remedies with no response, the most recent was in October."  (Lustberg

Decl., Ex. H.)

### ii.  Plaintiff's Additional Efforts to Grieve the Incidents

Plaintiff also contends that in addition to filing appeals of all relevant IRFs, he also sent

letters to various individuals within and outside the NJDOC, including Defendant Lanigan.  (Pl.

SSUMF at ¶ 19; Ltr. from Jesse Watkins, dated Dec. 6, 2011, Lustberg Decl., Ex. D.)  In one

such letter to Defendant Lanigan, Plaintiff stated: "On 12/4/11, while on my way to protestant

church services I was victimized by the above officers[,]" *i.e.*, Defendants Rokeach, Merriel, and

Logan.  (*Id.*)  Plaintiff also requested that the surveillance footage at 1-E Booth from December

4, 2011 be preserved, and noted that he intended to pursue litigation against these officers.  (*Id.*)

On December 12, 2011, Plaintiff received a letter from Cindy Ford, Coordinator of Central

Office Correspondence Unit, Division of Operations regarding his request for evidence tapes that

advised Plaintiff that she had forwarded his correspondence to "the Special Investigations

Division for their review and any action deemed appropriate." (*See* Ltr. from Cindy Ford to Jesse

Watkins, dated Dec. 12, 2011, Lustberg Decl., Ex. F.)  Plaintiff contends that he received no

further response regarding the outcome of the review by the Special Investigations Division. (Pl.

SSUMF at ¶ 19.)  It is unclear whether any investigation was conducted by the Special

Investigations Division.

Plaintiff also wrote to Defendant Lanigan on April 24, 2013 regarding his allegations of

retaliation against Defendant Merriel.  (*See* Lustberg Decl., Ex. K.)  Plaintiff filed another IRF

concerning Defendant's Merriel's alleged retaliation on November 24, 2014 (*see* Lustberg Decl.,

Ex. H), but alleges that he did not receive a response.  (*See* Grady Decl. at ¶ 2.)  More than a year

later, on February 5, 2015, M. Alfonso, Chief Investigator of the Special Investigations Division

wrote to Plaintiff advising him that his "allegations of threats by custody staff have been

received and reviewed for appropriate action. A thorough investigation has been conducted."

(Lustberg Decl., Ex. O.)   The letter also informed him that "the Special Investigations Division

has concluded its investigation and finds your allegations to be unsubstantiated.  No further

action is warranted at this time."  (*Id.*)

### iii.  Procedural History

Plaintiff's original Complaint was docketed on August 3, 2012.  (ECF No. 1.)  That

Complaint alleged violations of the Eighth Amendment and intentional infliction of emotional

distress against the Officer Defendants arising out of the December 4, 2011 incident at the

security checkpoint.  The Officer Defendants filed their Answer on June 7, 2013.  (ECF No. 18.)

It is undisputed that the Officer Defendants raised exhaustion of administrative remedies as an

affirmative defense in their Answer.  (*Id.*, Answer at 8.)  On October 10, 2013, the Court

appointed the law firm of Gibbons, P.C., to represent Plaintiff.  (ECF No. 32.)  Plaintiff, through

counsel, filed a motion to amend the Complaint on November 13, 2014.  Defendants opposed the

motion, and Judge Bongiovanni granted the motion to amend in a written opinion on March 19,

2015. (ECF Nos. 48, 62-63.).  The Amended Complaint restated the allegations against the

Officer Defendants from Plaintiff's original Complaint, and added Eighth Amendment

supervisory claims against Defendant Lanigan based on (1) his alleged knowledge of prior instances of assaults involving Defendant Merriel at security checkpoints and (2) his failure to implement a policy for dealing with wheelchair-bound inmates at security checkpoints.  (ECF No. 48-3, Am. Compl. at ¶ 43.)  The Amended Complaint also added a First Amendment retaliation claim against Defendant Merriel based on alleged threats he made against Plaintiff in response to Plaintiff's filing of the instant lawsuit. [8]   (*Id.*, Am. Compl. at ¶¶ 47-51.)  Defendants have since filed two dispositive motions:  a motion to dismiss and for summary judgment as to the claims pleaded in the Amended Complaint, and a motion for summary judgment as to the claims pleaded in the Original Complaint.   (ECF Nos. 67, 69.)

III.   **DISCUSSION**

a.  **Standard of Review**

Because the Court addresses only Defendants' motion for summary judgment as to its exhaustion defense, the Court recites only the summary judgment standard of review.  Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law."  *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  *Anderson*, 477 U.S. at 248.

_____

[8] The Amended Complaint also added state law claims for negligence and also sought injunctive relief.  (*Id.*, Am. Compl. at ¶¶ 52-58.)

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor .'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 447 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002).

The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. *Celotex*, 477 U.S. at 330. "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg.*, Inc., 243 F.3d 130, 138 (3d Cir. 2001). The non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005) (quotations omitted). Under *Anderson*, Plaintiffs' proffered evidence must be sufficient to meet the substantive evidentiary standard the jury would have to use at trial. 477 U.S. at 255. To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quotations omitted); *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokle*y, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

### b.   Exhaustion of Administrative Remedies

In relevant part, Defendants move for summary judgment on the basis of Plaintiff's failure to exhaust his administrative remedies with respect to (1) the December 4, 2011 incident, (2) his allegations of retaliation by Defendant Merriel, (3) and the supervisory claims against Defendant Lanigan.  Plaintiff first contends through his counsel's declaration that he filed appeals of all relevant administrative remedy determinations to which he received a negative determination from the NJDOC, including the December 10, 2011 IRF relating to the December 4, 2011 incident and the July 11, 2012 IRF regarding the alleged retaliation by Defendant Merriel.  Second, to the extent the Court finds that Plaintiff did not completely exhaust his administrative remedies, he asks the Court to find that those remedies were unavailable to him due to the NJDOC's tardy and dismissive responses and lack of response in some instances. Third, he contends that he followed alternate routes or parallel procedures for exhausting his grievances that were accepted by NJDOC.

The PLRA provides that "'[n]o action shall be brought with respect to prison conditions ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'"  *Ball v. Famiglio*, 726 F.3d 448, 456 (3d Cir. 2013) *cert. denied*, 134 S. Ct. 1547 (2014) (citing 42 U.S.C. § 1997e(a)).   "[T]he

PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  There is no futility exception to the exhaustion requirement. *See Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000).  "The PRLA does not require exhaustion of all remedies.  Rather, it requires exhaustion of such administrative remedies 'as are available.'" *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002) (citing 42 U.S.C. § 1997e(a)); *Camp v. Brennan,* 219 F.3d 279, 281 (3d Cir. 2000)).  "The availability of administrative remedies to a prisoner is a question of law." *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003) (quoting *Ray v. Kertes*, 285 F.3d 287, 291 (3d Cir. 2002).

Failure to exhaust administrative remedies is an affirmative defense that defendants bear the burden to plead and prove.[9] *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003).   "Furthermore, the defendant must prove that the prisoner-plaintiff failed to exhaust each of his claims.  There is no "total exhaustion" rule permitting dismissal of an entire action because of one unexhausted claim."  *Small v. Camden Cnty*., 728 F.3d 265, 269 (3d Cir. 2013) (citing *Jones*, 549 U.S. at 220–24.)

---

[9] Plaintiff suggests, without citation to any supporting law, that Defendants waived their exhaustion defense, which was pleaded in their initial answer, by failing to bring a motion for summary judgment in a more timely fashion. "The standard for affirmative defenses is that '[f]ailure to raise an affirmative defense by responsive pleading <u>or</u> by appropriate motion generally results in the waiver of that defense.'" *Drippe v. Gototweski*, 434 F. App'x 79, 81 (3d Cir. 2011) (citing *Charpentier v. Godsil*, 937 F.2d 859, 863 (3d Cir.1991) (emphasis added)). Because the Officer Defendants raised the affirmative defense of exhaustion in their responsive pleading, they are entitled to pursue this defense; at best, the Court could find that Defendants waived the right to summary relief by filing a belated motion.  *See Drippe*, 434 F. App'x at 81 (finding that failure to make timely dispositive motion based failure to exhaust administrative remedies, if properly pleaded in the Complaint, does not amount to waiver of that defense but could amount to waiver of right to summary relief on that defense).  The Court declines to do so here.

In addition, "exhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts. *Small*, 728 F.3d at 269 (citing *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008) and *Drippe v. Gototweski*, 604 F.3d 778, 781 (3d Cir. 2011)). As such, "judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." *Id.* at 271; *see also Messa v. Goord*, 652 F.3d 305, 308–09 (2d Cir. 2011); *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010); *Pavey*, 544 F.3d at 742; *Bryant v. Rich*, 530 F.3d 1368, 1373–75 (11th Cir. 2008); *Wyatt v. Terhune*, 315 F.3d 1108, 1119–20 (9th Cir. 2003)).

### i.   Exhaustion of Eighth Amendment Claims against Defendant Lanigan

The Court first addresses whether Plaintiff was required to separately exhaust his administrative remedies with respect to his supervisory claims against Defendant Lanigan, as alleged in the Amended Complaint. (ECF No. 67-1, Def. Br. at 13-14.) Defendants contend that "Plaintiff did not . . . assert a complaint against Defendant Lanigan, whether based on improper policy-making or otherwise, in any of his IRFs" (*Id.* at 13), and thus has failed to exhaust his claims against Defendant Lanigan. Plaintiff argues that it is sufficient that Defendants were on notice of the underlying incidents on which Plaintiffs bases his supervisory claims against Defendant Lanigan, and that Plaintiff need not name Defendant Lanigan in his IRF to exhaust his administrative remedies. (ECF No. 72, Pl. Br. at 13-15.)

To the extent Defendants contend that Plaintiff can only sue individuals he named in the relevant IRFs, the Court disagrees. In *Jones v. Bock*, 549 U.S. 199 (2007) the Supreme Court explained that proper exhaustion is "determined based on reference to the grievance regime of the inmate's facility." 549 U.S. at 218 ("Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"). In *Bock*, the Court held that because the Michigan Department of Corrections procedures "make no mention of naming particular

officials, the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is

unwarranted.  *Id.* at 218 (explaining that "the primary purpose of a grievance is to alert prison

officials to a problem, not to provide personal notice to a particular official that he may be

sued"); *see also Espinal v. Goord*, 554 F.3d 216 (2d Cir. 2009) (holding under *Bock* that a New

York state prisoner is not required to name responsible parties in a grievance in order to exhaust

administrative remedies because the grievance procedures contain no identification requirement).

In *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004), a decision that predates *Bock*, the Third Circuit

likewise held "that prison grievance procedures supply the yardstick" for determining what steps

are required for exhaustion.  *Id.* at 231.  Because "Pennsylvania requires that inmates identify

"persons who may have information that could be helpful in resolving the grievance," the Court

in *Spruill* held that Plaintiff was required to identify such persons "if practicable." *Id.* at 234; *see*

*also Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007).  The parties do not address the

Supreme Court's decision in *Bock* or the Third Circuit precedent on this issue.

　　　Here, Defendants have not pointed to any identification requirement in the NJDOC

regulations or Inmate Handbook requiring Plaintiff to identify Defendant Lanigan as a potential

Defendant in his IRF, and the Court has not found such a requirement.  The Inmate Handbook

sections submitted by Defendants require an inmate to explain the "problem or concern" clearly

and limit his IRF to one such problem or concern.[10]  (*See* Santoro Decl., Ex. B, Inmate

Handbook Excerpt at 95-98.); *see also* N.J.A.C. 10A:1-4.4(e).  Defendants also have not

explained how it would have been "practicable" for Plaintiff to identify Defendant Lanigan as a

---

[10] It is not clear whether Defendants also contend that Defendant Lanigan's failure to implement policies for searching wheelchair bound inmates is a separate "problem or concern" related to the December 4, 2011 incident for which Plaintiff should have submitted a separate IRF. In any event, Defendants have not provided any legal support for this argument.

potential defendant at the time he filed his December 4, 2011 IRF, given that Plaintiff only learned of the absence of such a policy during discovery in this litigation.  Under Defendants' view of exhaustion, a Plaintiff could never allege a policy or practice claim against a supervisor unless that Plaintiff knew at the time of the incident that a deficient policy existed and/or could identify the policy maker.  Defendants point to no legal precedent to suggest that Plaintiff must separately exhaust his supervisory claims against Defendants Lanigan.  Instead, it appears to the Court that the supervisory claims against Defendant Lanigan would be exhausted if Plaintiff sufficiently exhausted the December 4, 2011 incident.  As such, the Court denies summary judgment on Defendants' claim that Plaintiff failed to exhaust his administrative remedies with respect to the supervisory claims against Defendant Lanigan and turns to whether Plaintiff exhausted his administrative remedies with respect to the December 4, 2011 incident and the alleged acts of retaliation by Defendant Merriel.

### ii.  Plaintiff's Contention that He Appealed the Relevant IRFs

The Court next addresses Plaintiff's argument that he appealed the December 10, 2011 IRF, related to the December 4, 2011 incident, and July 11, 2012 IRF, related to the alleged retaliation by Defendant Merriel.  As explained in the New Jersey Administrative Code, the NJDOC Inmate Remedy Form ("IRF") system is a two-step process that includes both (1) an opportunity for the inmate to make a routine request or request an interview; and (2) an opportunity to appeal the resulting decision or finding.  *See* N.J.A.C. 10A:1-4.4(c).  Pursuant to N.J.A.C. 10A:1-4.4(d),  "[t]he comprehensive Inmate Remedy System to include a "Routine Inmate Request" and/or "Interview Request," and an "Administrative Appeal" must be utilized and fully exhausted prior to an inmate filing any legal action regarding information requests, issues, concerns, complaints, or problems."

The parties dispute only whether Plaintiff appealed the relevant IRFs.  Plaintiff contends through the declaration of counsel that he did appeal all relevant negative administrative determinations from the NJDOC, including the IFRs dated December 10, 2011 and July 12, 2012, but he is unable to produce copies of those appeals because Defendants did not provide him with copies of the appeals when he submitted them and did not permit him to make copy of the appeal.  (McGrady Decl. at ¶¶ 2-3.)  Defendants, in their reply brief, argue that the Court should decline to consider the declaration of Plaintiff's counsel because that declaration is improper and not based on personal knowledge, as required by Fed. R. Civ. P. 56(c)(4).  Even if the Court considers the declaration, Defendants argue that it should be rejected as a self-serving affidavit, which cannot be used to defeat summary judgment.

Defendants contend that the McGrady Declaration violates Rule 56(c)(4), which provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *See* Fed. R. Civ. P 56(c)(4).  The Court agrees with Defendants that the McGrady Declaration is deficient under Rule 56(c)(4) because it is not based on personal knowledge but also finds that, pursuant to Rule 56(c)(2), the contents of the McGrady Declaration could easily be offered through Plaintiff's own testimony and thus could be converted into admissible form for trial.  *See* Rule 56(c)(2).[11]  Rule 56(e)(1), as

---

[11] "Rule 56(c)(2) was amended in 2010 to provide that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Thus, "the objection [now] contemplated by the amended Rule is not that the material 'has not' been submitted in admissible form, but that it 'cannot' be." *Paradoa v. Philadelphia Hous. Auth.*, No. CIV.A. 13-6012, 2014 WL 2476595, at *6 (E.D. Pa. June 2, 2014).  As such, a non-moving party's evidence must only be <u>convertible</u> to admissible form at trial in order to survive summary judgment.  *See Barr v. County of Clarion*, 417 Fed. App'x 178, 180 n. 4 (3d Cir. 2011) ("hearsay statements can be considered on a motion for summary

amended, also provides that "[i]f a party fails to properly support an assertion of fact or fails to

properly address another party's assertion of fact as required by Rule 56(c), the court may, before

granting summary judgment "(1) give an opportunity to properly support or address the fact" or

"(4) issue any other appropriate order." [12]

Defendants next argue that even if the Court considers the declaration by Plaintiff's

counsel, it should grant summary judgment because the content of the declaration, even if it had

been submitted by Plaintiff, does not create an issue of material fact and is self-serving and

conclusory.  (ECF No. 75, Reply at 6-7.)  Generally speaking, "[a] plaintiff is entitled to rely on

her own affidavit in opposition to summary judgment, which alone can be sufficient to defeat

summary judgment." *Bell v. Lockheed Martin Corp.*, No. CIV. 08-6292 RBK/AMD, 2014 WL

2920503, at *24 (D.N.J. June 27, 2014) (citing *Gray v. York Newspapers*, 957 F.2d 1070, 1080

(3d Cir.1992)); *see also Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 251 (3d Cir. 2007)

(explaining that affidavit may not contradict prior testimony without plausible explanation).

Courts in this District have found issues of fact regarding the availability of administrative

remedies based solely on the prisoner's contention (albeit supported by affidavit or declaration)

he filed an IRF or an appeal but the prison failed to respond.  *See Paladino v. Newsome*, No.

CIV. 12-2021, 2013 WL 3270987, at *8 (D.N.J. June 27, 2013) (holding that defendants did not

---

judgment if they are capable of admission at trial") (citing *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 223 n. 2 (3d Cir. 2000) ("this circuit" follows that rule)).

[12] In addition, the 2010 Advisory Committee Notes regarding this rule explain that summary judgment cannot be granted by default even if there is a complete failure to respond to the motion, much less when an attempted response fails to comply with Rule 56(c) requirements." Federal Civil Judicial Procedure & Rules, 2010 Advisory Committee Notes to subsection 56(e), at 255 (Thomson Reuters, 2014 Revised Ed.). The Notes further explain that "[b]efore deciding on other possible action, subdivision (e)(1) recognizes that a court may afford an opportunity to properly support or address the fact. In many circumstances this opportunity will be the court's preferred first step."  *Id.*

meet their burden of establishing that Plaintiff failed to exhaust administrative remedies for his

Eighth Amendment claim challenging the conditions of his confinement and his Fourteenth

Amendment claim alleging disparate treatment) (citing *Jackson v. Gandy*, 877 F.Supp.2d 159,

179 (D.N.J. June 29, 2012), *on reconsideration in part on unrelated grounds*, No. CIV. 12-2021,

2013 WL 5161144 (D.N.J. Sept. 12, 2013); *Ortiz v. Hayman*, CIV. 06-4730, 2008 WL 1319203,

at *4 (D.N.J. Apr. 10, 2008) (denying summary judgment where there was a dispute of fact

regarding whether Plaintiff actually filed an initial IRF); *but see Miller v. Ricci*, No. CIV. 11-

0859, 2013 WL 1987255, at *2-3 (May 13, 2013) (granting summary judgment for failure to

exhaust where Plaintiff claimed he appealed the staff response to his grievances but there was no

other record evidence to support his contention and the production of 35 forms by Defendants

"militate[d] against a finding that the NJDOC misplaced or destroyed his purported appeal"),

*aff'd,* (3rd Circ. 13-2808) (Nov 01, 2013).

        Unlike the facts in *Miller v. Ricci*, 2013 WL 1987255, at *2-3, there is at least some

record evidence suggesting that Plaintiff did not receive responses from prison officials related to

some IRFs he submitted.  Notably, Plaintiff has submitted an undated "Corrective Action Form"

that reads as follows:

> There are no IRSF forms in February indicating these issues,
> however in April there is a complaint relating to staff forcing
> inmates out of their wheelchairs, which I assume is relating to the
> same staff member.  The Remedy Coordinator has retired, so I am
> not sure if he rejected either of these forms for any reason,
> therefore should you wish to resubmit them (due to the yellow
> copy not being attached I cannot accept these copies), I will accept
> them.[13]

(Lustberg Decl., Ex. P.)  Notably, pursuant to the administrative regulations and the Inmate

---

[13] In paragraph sixteen of his Supplemental Statement of Material Facts, Plaintiff indicates that
this Corrective Action Form was written in response to Plaintiff's June 4, 2012 IRF.

Handbook, an IRF must be "properly completed, legible, signed, and include[] clear and concise statements," and when it does not meet those requirements, the Inmate Remedy Form Coordinator oversees the completion of a "IRSF-103 Staff Corrective Action Form" that is "forwarded to the inmate."  N.J.A.C. 10A:1-4.8.  The staff member also references "staff forcing inmates out of their wheelchairs," which suggests that the missing IRFs may have been related to the December 4, 2011 incident.

Approximately six months prior to the December 4, 2011 incident, Plaintiff submitted an IRF, dated June 30, 2011, regarding NJDOC's failure to respond to initial IRFs related to other incidents, stating "I have some concerns because I haven't received (any) responses back from numerous[] complaints since (April, May) . . . . I would really appreciate if I could finally receive a response because I'm complying with procedures and still seem to be being neglected." (Lustberg Decl. at Ex. A.)  Finally, Plaintiff has submitted an IRF dated November 24, 2014, regarding alleged acts of harassment by Defendant Merriel.  This IRF states that Defendant has "submitted numerous remedies with no response, the most recent was in October."  (Lustberg Decl., Ex. H.)

To support his argument, Plaintiff also calls attention to the fact that the IRF remedy process explicitly requires an inmate to submit his appeal on the yellow copy returned to him by the NJDOC in order to have the appeal processed.  *See* N.J.A.C. 10A:1-4.6(b) (An "Administrative Appeal" must be submitted by the inmate, utilizing the canary-colored IRSF--101, within 10 calendar days from the issuance of the decision or finding of the correctional facility staff member to the "Routine Inmate Request" or "Interview Request.").  Thus, in a situation like the one alleged by Plaintiff, where the NJDOC misplaces an inmate's appeal and the inmate was not permitted to make a copy, the inmate would have no "evidence" that he filed

- 19 -

an appeal and would be forced to rely on his own testimony to that effect.[14]

Based on the record, the Court finds that there are disputed issues of fact regarding whether Plaintiff appealed the December 4, 2011 and July 11, 2012 IRFs and denies without prejudice Defendants' motion for summary judgment on this issue.

### iii.  Exhaustion through Parallel Procedures

In addition to appealing the relevant IRFs, Plaintiff also contends that he sufficiently exhausted his administrative remedies for the December 4, 2011 incident and alleged retaliation by Defendant Merriel through alternate or parallel procedures that were accepted by the NJDOC. Defendants strenuously argue that exhaustion must be accomplished through the IRF process and dispute the existence of any such parallel procedure.  The Court next considers whether there are issues of material fact that preclude summary judgment on this issue.

There "is no express federal law describing the procedural requirements with which prisoners must comply in satisfying § 1997e(a)'s exhaustion requirement[;]" as such, the procedures set out in a prison's administrative grievance program serve as the measure for whether an inmate has exhausted his administrative remedies.  *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004).  A procedurally faulty attempt at exhaustion, if accepted by the jail, however, will satisfy the PLRA.  *Williams v. Beard*, 482 F.3d 637, 640 (3d Cir. 2007).

---

[14] To the extent Defendants suggest that Plaintiff was required to resubmit the relevant IRF appeals or otherwise follow up when he allegedly did not receive a response from prison officials, that argument has been addressed and rejected by the Third Circuit.  In *Small v. Camden County*, 728 F3d 265, 273 (3d Cir. 2013), the Third Circuit held that a remedy is unavailable where the prison fails to respond to the inmate's grievance.  *Id.* (district court erred in requiring inmate to file appeal of non-response by prison officials and finding the appeals process unavailable where prison failed to respond to inmate's initial grievance); *see also Bond v. Horne*, 553 F. App'x 219, 222 (3d Cir. 2014) (appeals process unavailable where prison never responded to inmate's appeal or follow-up letter).

Pursuant to N.J.A.C. 10A:1-4.4(d), the two-step process, *i.e.*, IRF and appeal, must be utilized and fully exhausted prior to an inmate filing any legal action regarding information requests, issues, concerns, complaints, or problems." Courts are not required, however, "to blindly apply the written administrative exhaustion procedure without considering the reality of the review process." *Smith v. Merline*, 719 F. Supp. 2d 438, 445 (D.N.J. 2010). Thus, the Third Circuit and courts in this District have recognized that an inmate may satisfy the exhaustion requirement where he follows an accepted grievance procedure, even where that procedure contradicts a written or formal policy. *See Baez v. Fauver*, 351 F. Appx. 679, 681–82 (3d Cir. 2009) (vacating and remanding decision of a district court, in part, because the court failed to consider the existence of a parallel reporting procedure put in place at Bayside State Prison); *see also Smith v. Merline*, 719 F.Supp.2d 438, 445–46 (D.N.J.2010); *Jackson v. Gandy*, 877 F. Supp. 2d 159, 178 (D.N.J. 2012); *Jenkins v. Hayman*, CIV. 09-4989, 2013 WL 3201326, at *8-9 (Jun. 24, 2013); *see also Curtis v. Timberlake*, 436 F.3d 709, 712 (7th Cir. 2005).

It is notable that prison authorities may also waive the exhaustion requirement if the ultimate administrative authority fully examines the inmate's complaint on the merits, regardless of whether the complaint complied with the prison grievance process. *See McKinney v. Guthrie*, 309 F. App'x. 586, 587 (3d Cir. 2009) (citing *Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir. 2000)); *see also Bredbenner v. Malloy*, 925 F. Supp. 2d 649, 658 (D. Del. 2013) (explaining same). In *Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir. 2000), the Third Circuit held that the exhaustion requirement was satisfied where defendants informed the Court that the plaintiff's "allegations have been fully examined on the merits by the ultimate administrative authority and have been found wanting." Because the substantive determination was already made at the highest level, the Court declined to find that the plaintiff must "jump through any further

administrative hoops to get the same answer" and held that "judicial consideration is now open to [plaintiff]."  *Id.*

Here, questions of material fact exist as to whether Plaintiff's claims of retaliation by Defendant Merriel were adjudicated through a parallel procedure, *i.e.*, an investigation by the Special Investigations Division, and were fully examined on the merits at the highest level and found to be wanting.  In *Jackson v. Gandy*, 877 F.Supp.2d at 179, for instance, the District Court denied summary judgment based on an exhaustion defense where the Plaintiff submitted correspondence suggesting that he had informed the NJDOC's Special Investigation Division of his claims and the Division conducted an investigation of Plaintiff's allegations.  In denying summary judgment, the Court explained that "Defendants' motion does not adequately address the role of the Special Investigations Division or whether the Special Investigation Division's role overlaps with the established grievance procedures."  *Id.*   It is notable that both *Baez* and *Jackson*, cited *supra*, dealt with an inmate's claim that he has exhausted his administrative remedies via an investigation by NJDOC's Special Investigations Division.  Plaintiff has submitted a letter, dated February 5, 2015, from M. Alfonso, Chief Investigator of the Special Investigations Division, which advised Plaintiff that his "allegations of threats by custody staff have been received and reviewed for appropriate action.  A thorough investigation has been conducted."  (ECF No. 72-19.)  The letter further explains that "other interviews were conducted and there was no evidence found to substantiate [Plaintiff's] allegations of threats by custody staff members."  (*Id.*) The letter closes by informing Plaintiff that "the Special Investigations Division has concluded its investigation and finds your allegations to be unsubstantiated.  No

- 22

further action is warranted at this time."[15]   (*Id.*)   Although Defendants insist in their moving

briefs and the Declarations submitted by Ms. Santoro and Mr. Dutch that the NJDOC recognizes

the Inmate Remedy System as the only "formal" method through which an inmate may pursue a

grievance, the evidence submitted by Plaintiff suggests otherwise.   As in *Jackson*, 877 F.Supp.2d

at 179, Defendants here do not address the role of the Special Investigations Division, or whether

the Special Investigations Division performs functions that overlap with the established

grievance procedure and there are issues of material fact as to whether Plaintiff's allegations of

retaliation were fully examined on the merits.   As such, Defendants have not met their burden to

establish that Plaintiff failed to exhaust his administrative remedies as to his retaliation claim.

     The Court is less persuaded by Plaintiff's argument that he sufficiently grieved the

December 4, 2011 incident by writing letters to various administrators within and outside the

NJDOC, including Defendant Lanigan.   I note, however, that Plaintiff received a letter from

Cindy Ford, Coordinator of Central Office Correspondence Unit, Division of Operations, in

response to his letters, advising Plaintiff that she had forwarded his correspondence to "the

Special Investigations Division for their review and any action deemed appropriate" (*See* ECF

No. 72-10, Ltr. from Cindy Ford to Jesse Watkins, dated Dec. 12, 2011, Lustberg Decl., Ex. F.).

Plaintiff contends that he received no further response regarding the outcome of the review by

the Special Investigations Division.   (Pl. CSUMF at ¶ 19.)   Once again, it is not clear from the

---

[15] The Special Investigations Division made this determination after Plaintiff sought leave to file
his Amended Complaint on November 13, 2014 but before the Court granted his motion to file
an amended/supplemental Complaint on March 19, 2015.   (ECF Nos. 48, 62-63.).

record how the role of the Special Investigation Division overlaps, if at all, with the formal grievance procedure.[16]

### iv.  The Court will Hold a Hearing to Resolve the Exhaustion Issues

For the reasons explained above, the Court denies summary judgment on Defendants' exhaustion defense finding there are issues of fact as to whether Plaintiff (1) appealed the relevant IRFs but never received a response from NJDOC and whether (2) Plaintiff exhausted his administrative remedies through parallel procedures that were accepted in practice by the NJDOC.  Because the issue of whether Plaintiff exhausted his administrative remedies as to the claims against Defendant Lanigan appears to be contingent on whether he exhausted the December 4, 2011 incident, the Court also denies without prejudice Defendants' motion for summary judgment on this issue as well.

Although the Court denies summary judgment, it hereby advises the parties that it intends to hold a hearing to resolve Defendants' exhaustion defense(s).  The Court finds support for this procedure in *Small*, 728 F.3d at 271, where the Third Circuit, following other circuit courts to have considered the issue, definitively held "that judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." *Id.*  In *Small*, the defendants had moved for summary judgment, arguing among other things, that plaintiff failed to exhaust his administrative remedies before filing suit.  (*Id.* at 267.)  The District Court denied the defendants' motion without prejudice and stated its intention to hold an evidentiary hearing on the issue of exhaustion before reaching any of the other asserted bases for summary judgment.

---

[16] On the summary judgment record, it appears that Plaintiff's claim that he exhausted the December 4, 2011 incident rises and falls largely on issues of credibility, *i.e.*, whether he appealed the IRF related to the December 4, 2011 incident and received no response.

(*Id.* at 267-68.)  After holding a two-day evidentiary hearing, the Court held that the plaintiff failed to exhaust all but one of his claims.  (*Id.*)  The case subsequently settled and the plaintiff appealed, arguing in part that he was entitled under the PLRA to have a jury decide the exhaustion issue. (*Id.* at 269.)  The Third Circuit disagreed, recognizing that "[t]hose of our sister circuits to have considered the issue have held that a plaintiff in a lawsuit governed by the PLRA is not entitled to a jury trial on the issue of exhaustion." *Id.* at 270 (citations omitted).  Before turning to the question of whether the district court's findings were clearly erroneous, the Court squarely held that "the district court did not err in acting as the factfinder on the exhaustion issue." [17]  *Id.* at 271 (reversing in part the district court's finding that the plaintiff was required to appeal a non-decision in order to exhaust his administrative remedies).

Because there are issues of fact on the issue of exhaustion that preclude summary judgment here, the Court, noting the Third Circuit's apparent approval of such a procedure, will deny without prejudice Defendants' motion for summary judgment and conduct an evidentiary hearing to resolve the factual disputes regarding Plaintiff's exhaustion of his administrative remedies.[18]  Because a finding that Plaintiff failed to exhaust his administrative remedies with

---

[17] The Court recognizes that in lieu of holding a hearing to resolve the threshold exhaustion issues, other Courts in this District have denied summary judgment without prejudice with respect to exhaustion and reached Defendants' other summary judgment arguments.  *See, e.g.*, *Jackson*, 877 F. Supp. at 179-80 (granting in part and denying in part Defendants' motion for summary judgment).  *Jackson*, however, was decided in 2012 and predates the Third Circuit's decision in *Small*, 728 F.3d at 271.  In *Jackson*, the Court subsequently granted Defendants' motion for a bifurcated trial concerning their exhaustion defense, and, after holding a two-day trial, held that Plaintiff had exhausted all available administrative remedies.  *See Jackson v. Gandy*, No. CIV. 09-1141, 2014 WL 4827407, at *1-8 (D.N.J. Sept. 29, 2014).  In light of *Small*, the Court has decided to follow the procedure utilized by the District Court in that case.

[18] In addition to its apparent approval of the procedure used by the District Court, the Third Circuit cited approvingly to the Seventh Circuit's procedure for resolving exhaustion issues early in the litigation; that procedure instructs the District Court to hold a hearing prior to discovery or with limited discovery on the issue of exhaustion.  *Id.* at 271 n.5 (citing *Pavey*, 544 F.3d at 742).

- 25

respect to some or all of his claims may moot the need to reach the other grounds for dismissal and summary judgment raised by Defendants, the Court will defer ruling on Defendants' remaining arguments for dismissal and summary judgment at this time.  Should the Court determine after the hearing that Plaintiff exhausted his administrative remedies with respect to one or more of his claims for relief, the Court will reinstate Defendants motion to dismiss and for summary judgment.

### IV.    <u>CONCLUSION</u>

For the reasons expressed in the foregoing Opinion, the Court denies without prejudice the Defendants' motion for summary judgment on whether Plaintiff exhausted his administrative remedies with respect to his section 1983 claims and will hold a hearing to resolve Defendants' exhaustion defenses.  That hearing will be held on **October 27, 2015, at 10:00 a.m.**  The Court will defer any ruling on Defendants' remaining arguments for dismissal and summary judgment until such time as it determines whether Plaintiff has exhausted some or all of his administrative remedies.  An appropriate Order follows.

  /s/ Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.

Date: September 29, 2015